CASES ARGUED AND DECIDED

—IN THE—

# SUPREME COURT OF MISSISSIPPI,

—AT THE—

## OCTOBER TERM, 1896.

### R. P. MILLER *v.* DELTA & PINE LAND CO.

1. TAX COLLECTOR. *Advertisement of land. Code* 1892, § 3811.

   Under § 3811, code 1892, if the taxes on lands are unpaid after the fifteenth day of January, the tax collector is vested with a limited discretion as to when the advertisement of the lands for sale is to be made. He may advertise them on the sixteenth day of January, or any succeeding day, so that they are advertised for three weeks before the day of sale.

2. SAME. *Fees, ten per centum damages. Code* 1892, § 2021.

   Under § 2021, code 1892, a tax collector is entitled to ten per centum on all taxes not paid until after December 15 and after legal action has been begun to coerce payment, and legally advertising the property for sale is such action.

3. SAME. *Injunction.*

   The tax collector will not be enjoined from collecting the ten per centum provided by law on the grounds that the publication could have been begun later, and that the collector knew the taxes would be paid.

4. SAME. *Payment after action begun.*

   Though a tax collector's proceedings to enforce collection be interrupted by payment of the taxes, he will be entitled to the per centum because of coercive action begun.

FROM the chancery court of Sunflower county.
HON. A. H. LONGINO, Chancellor.
The facts are stated in the opinion of the court.

*Mayes & Harris,* for the appellant.

We contend, in the first place, that, in case of actual and indisputable delinquency, such as is shown in this cause, the lan guage of the statute is clear and explicit; that for taxes collected by the officer he is entitled to his ten per centum commission, even though he performs no other service than the reception of the money and the receipting therefor. And we contend, in the second place, that if the court shall not adopt this view, then whenever the tax collector, in the discharge of the duty imposed upon him by law, shall have performed any service whatever towards the actual collection, he becomes entitled to his commission; and his right to his commission is not postponed until the completion of the service by a perfected collection by adverse process. We claim that the action of the tax collector in this case, by making out the tax list, and placing the same in the hands of the printer, and posting notice at the courthouse door, was such action as entitled him to his commission for money actually received by him. The line must be drawn somewhere; and we submit that the safest and best place to draw the line is just where the clock strikes twelve on the night of December 15, because that is the place indicated by the statute. The next best place for the line is just where the tax collector, in case of settled delinquency, begins to bestir himself in the exercise of his ministerial duties to enforce the law.

We observe that counsel for the appellee indulge some criticism of the tax collector in this case, on the idea that his action in making out his tax list of delinquents and handing the same to the paper for publication on January 15, was precipitate and censurable. We deny that. We deny it, in the first place, on the ground that his action was authorized by law, and that

no public functionary is to be criticised or censured for doing
that which the law authorizes. We deny it, in the second
place, on the ground that his action, being authorized by law,
was justified further by the ordinary consideration of prudence
and discretion. He himself states that he did it in order to
guard against the always possible dangers of mistakes and mis-
carriages; and even in the absence of such a statement, the
course adopted by him would be manifestly the wise and pru-
dent course, for the reason that an early advertisement gives
opportunity to correct any errors and mistakes; whereas, if
the course suggested by counsel as being the only justifiable
one to adopt, was pursued (which is to postpone the advertise-
ment until the last three possible weeks before the sale), a ty-
pographical error in the advertisement could not be corrected
at all.

*Baker & Moody*, on same side.

In the case of *Anderson* v. *Hawks*, 70 Miss., 639–645, in
construing § 2021, code 1892, this court say: "The language
of the law is that the collector shall be entitled to receive from
the delinquent taxpayer ten per centum on all taxes collected
after the fifteenth of December, by distress or otherwise. The
words 'distress or otherwise' obviously relate to the taxes
on which the per centum is to be calculated, and not to the ten
per centum only. The collector is entitled to ten per centum
on such taxes as shall be collected by him after the fifteenth of
December, by distress or otherwise. Keeping in view the fact
that the allowance is made as compensation for services, and
that delinquent taxes may be collected (1) by distress and sale
of personal property (code 1892, § 3802); (2) by sale of land
(*Ib.*, §§ 3811–3815); (3) by certifying the assessment to other
counties in which the delinquent may have property (*Ib.*,
§ 3822); (4) by suit (*Ib.*, § 3747); (5) by action on the bond
required of transient traders (*Ib.*, § 3871), it is not difficult to
discover the meaning of the words 'distress or otherwise,'

which, upon familiar rules, are to be construed as applying to matters *ejusdem generis* as the preceding particular words, a contrary intention not appearing.''

Did appellant, therefore, in this case, perform the labor necessary to entitle him to the ten per centum damages? We think so. He posted the notice of sale at the courthouse door, as the law required, and gave the same to the printer to be advertised in his paper, all of which was done before any tender of the money had been made to appellant. So far as the appellant was concerned, there was nothing more for him to do except sell the land when the day for sale arrived. For making the sale he was allowed additional fees, and if, after advertising the land, the taxes had been paid to him, such collection would be all that the law expected to accomplish by having the same sold, and we see no reason why, under such circumstances, appellant would not be entitled to the additional compensation allowed by law of ten per centum upon the amount thereof.

Counsel for appellant relies upon the case above cited to maintain his position, but we submit that the case at bar and that case are not at all analogous. In that case, Hawks, the taxpayer, was endeavoring all the time to ascertain the amount of his taxes, in order that he might pay the same, but the tax collector did not have the assessment roll at the time the law required it to be in his office, so the taxpayer failed to ascertain the amount thereof, and it was for this reason that he was delinquent at all. In the case at bar, however, appellee not only failed to pay its taxes on or before the fifteenth of December, the time in which the law made it its duty to do so, but it was in default for near thirty days before it made any effort whatever to pay the same, and then, at that time, it wholly disregarded the law as to that in which it should pay its taxes. Again, appellee never made any effort to ascertain from appellant the amount of its taxes, neither did it make any effort to ascertain if a check would be accepted. By such action appellee was not only guilty of negligence, but acted in

utter disregard of the plain requirement of the law. It seems to us, therefore, that such action on the part of the appellee is not such as would commend itself to a court of equity. Again, in the above cited case, Anderson, the tax collector, had performed no service whatever by which he could ask the court to allow him the ten per centum damages as compensation therefor. In this suit it is different. Here appellant was not only put to the trouble of listing appellee's lands, but he, in fact, had the same advertised before any money had been tendered to him, and, so far as he was concerned, there was nothing else he could do, as we have stated, but sell the land, for which service he was allowed additional compensation.

*Frank Johnston,* for appellee.

1. The ten per centum damages is not a penalty, but compensation for the services enumerated in the statute. And the particular service for which the compensation is allowed must have been rendered, and it must come within the terms of the statute.

2. The tender was made before the publication of the notice of sale. And the tax collector, after the tender had been made, had no authority for advertising the land, and was not entitled to the damages.

3. All that was done, before the tender by the collector, was to make out a list of the land and hand it to the printer. And this was done on January 15. This service is not one enumerated by the statute which entitled the tax collector to the damages.

4. The advertisement of the sale six weeks before the sale day was premature, irregular, and not warranted by the statute. By this irregular and unwarranted proceeding, the tax collector could not impose the damages on the taxpayer.

5. The statute clearly contemplates that the advertisement of the sale shall be made and appear during the three weeks preceding the sale day. Three weeks' notice is expressly pro-

vided, and this cannot mean an insertion for three weeks beginning six weeks before the sale, with a period of three weeks intervening, during which there would be no publication of the notice of sale. Such has never been the custom in selling lands for taxes.

Upon each and all of these grounds, the decision of the chancellor, refusing to dissolve·the injunction, should be affirmed: *Railroad Co.* v. *Love,* 69 Miss., 109; *Wynne* v. *Railroad Co.,* 45 Miss., 569; *Anderson* v. *Hawks,* 70 Miss., 643.

Argued orally by *Frank Johnston,* for appellee.

COOPER, C. J., delivered the opinion of the court.

In *Anderson* v. *Hawks,* 70 Miss., 639, we held that the ten per centum on taxes collected by the tax collector after December 15, allowed by § 2021 of the code, was not in the nature of a penalty, but was allowed as compensation for additional services to be performed by the collector, and that when no action had been taken by the collector to coerce payment of the taxes, he was not entitled to recover the per centum, although the taxes were not tendered by the taxpayer until after December 15, the day named in the statute. The present appeal rests upon different facts. The appellee remitted to the collector a certified check for the amount of its taxes, which came to his hands on January 14. This check the collector refused to accept in payment of the taxes, because it was not money, and because, also, it placed the funds at a point at which he did not desire a deposit. The check was remailed to appellee on the day of its reception by the collector. By the first available means of communication the appellee sent to the collector the proper amount in money, which was tendered to him by the agent of the appellee at 6 o'clock P.M. on the sixteenth of January. The collector then refused to accept the taxes unless the additional ten per centum thereon was paid.

On the thirteenth of January the collector, through his em-

ployes, began to prepare the list of lands which were delinquent for taxes. The list was completed on the fifteenth and a copy thereof handed to the editor of the county paper for insertion in the next issue, and by 4 o'clock on the evening of the sixteenth proof was struck off and handed to the collector. The paper was issued some time in the evening of that day. On the morning of the sixteenth (before 9 o'clock) the collector posted on the door of the courthouse a list of the delinquent lands. Upon the refusal of the collector to accept the tender of the sum due for taxes on the sixteenth of January, the appellee filed its bill, paying into court the amount of the taxes, and procured an injunction restraining the collector from making sale of the lands for the ten per centum claimed by him as additional compensation. On final hearing, the amount paid into court by the appellee, together with the sum of $50 for printer's fees and $63 the advertising fee found by the court to be due to the collector, was directed to be received by him in full satisfaction of all demands against the complainant, and the injunction was thereupon made perpetual. From this decree the collector appeals.

By our statutes it is made the duty of all persons to pay the taxes assessed against themselves or their property on or before the fifteenth day of December (code, § 3801), and after that day it is made the duty of collectors to collect all taxes by distress and sale of personal property (code, § 3802). Section 3811 of the code provides that "after the fifteenth day of January the tax collector shall advertise all land in his county on which the taxes have not been paid, or which is liable to sale for other taxes, for sale at the door of the courthouse of his county on the first Monday of March following. Such advertisement shall be inserted for three weeks in some newspaper published in the county, if there be one, and be put up at the courthouse door, and shall contain a list of the lands to be sold in numerical order as they are contained in the assessment roll."

The appellee contends that the collector is not entitled to demand the additional compensation, for the reasons: (1) That he was advised by the remittance of the certified check that the appellee was in good faith endeavoring to pay its taxes, and should have allowed a sufficient time, after he had declined to receive the check, to enable appellee to remit to him the money; (2) that the law only requires publication of the delinquent lands to be made for three weeks, and the collector was therefore premature in making the publication on the sixteenth of January, and should not be permitted to claim that what he thus unnecessarily did was the discharge of official duty; (3) that the compensation was not earned, because no sale was in fact made.

If the collector was authorized by the law to advertise the land for sale, we are unable to see that the power was at all limited by the circumstances of the appellee. It may have been an ungracious and harsh insistence upon a legal advantage, and the advertisement may have been made at the very earliest permissible time, for the purpose of fixing upon the appellee liability for the additional sum, but the law cannot test the validity of individual action by the motives which impel the actor. A legal act having legal consequences only, is not rendered illegal by the fact that it is done with an avaricious or unworthy purpose. We do not so characterize the conduct of the officer. We only say that, conceding what the appellee avers to be true, we know no principle upon which the law would condemn the act. The appellee negligently omitted to pay its taxes until the period in which they might be paid was about to expire, and assuming, without any suggestion from the collector, that he would accept a check for the taxes, made its remittance in that form. That he was under no obligation to receive the check, the appellee admits. If this be true, as it unquestionably is, we fail to perceive what legal right of appellee was infringed by the officer in making advertisement of the lands at the earliest permissible time.

We are also of opinion that what was done by the collector was within both the letter and spirit of the statute. After January 15, the collector was vested with discretion as to when the advertisement shall be made. On January 16, or on any other succeeding day, he might lawfully have proceeded with the publication; but the statute fixed the price which should be paid to the printer, and no additional sum could have been paid by reason of the publication being made for a longer period than that prescribed—three weeks. We cannot concur in the view that the additional compensation cannot be demanded by the officer unless the collection is made by an actual sale of the property. A collection by resorting to any of the plans named in the statute entitles the officer to the per centum, even though the proceeding is interrupted by payment of the taxes. The sum given by the statute cannot be apportioned, and a larger or smaller amount, in proportion to the work done, be awarded as on a *quantum meruit;* the collector is entitled to all or none. There is no point in the proceeding, once begun, at which it may be said that the right to the compensation has attached rather than at another. The compensation is given as a unit; it cannot be apportioned. It is given when the collection is made by distress or other proceeding provided by the law, and the proceeding is necessarily also to be viewed as a unit. Whether the collection is made by virtue of a proceeding, initiate or complete, it is by the proceeding it is made, and the right to the compensation exists, because, otherwise, whether it would be payable at all would depend upon the will of the delinquent taxpayer, rather than upon the letter of the law.

*The decree is reversed, the injunction dissolved, and the bill dismissed.*